UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

JEFFREY PEGLOW,

        Plaintiff,

v.

JOAN ALFREY et al.,

        Defendants.
_____/

Case No. 1:18-cv-573

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint against all Defendants for failure to state a claim.

## **Discussion**

    **I.**    **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility (STF) in St. Louis, Gratiot County,

Michigan. The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues IBC Nurses Joan Alfrey, Meridith J. Hammond, Kevin D. Corning, Lindsey K. Taylor, Mitchell S. Williams, Jerry C. Ritz, Karen Rosa, Sherri Gregurek,[1] S. Buskirk, and A. Kamp, as well as one or more IBC Unknown Medical Providers (Doctors). He also sues Nurse and Clinical Adminstrative Assistant, Jackson Health Care Office Administration, Sabrina Aiken; Nurse R. Harbaugh from the MDOC's Bureau of Health Care Services; MDOC Manager of the Grievance Section, Office of Legal Affairs, Richard D. Russell, and the Michigan Department of Correcitons.

Plaintiff alleges that he suffers from back pain. Plaintiff's complaint tracks his attempts to get medical care to relieve his back pain beginning in January of 2015 and continuing through November of 2016. Plaintiff's brief allegations are augmented by documents he attaches to his complaint including Health Care Requests, Grievances, and Responses. Plaintiff contends that each of the Defendants played some role in denying him treatment for his back pain. He claims that each Defendant was deliberately indifferent to his serious medical need in violation of his Eighth Amendment rights. Plaintiff seeks $100,000.00 in damages from each Defendant.

II.     **Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678

---

[1]Plaintiff spells this nurse's surname "Gregueck." Her kite response to Plaintiff's health care request, however, provides the spelling "Gregurek." (8/3/2016 Kite Response, ECF No. 1, PageID.30.) That is the spelling the Court will use.

(2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff alleges that Defendants have violated the Eighth Amendment.

### III. Deliberate Indifference

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates

3

prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 898 (6th Cir. 2004), the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be

4

drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's complaint allegations as to the conduct of each Defendant are conclusory and general. He attributes the denial of medical treatment to "all Defendants." He states that "all Defendants" have acted with deliberate indifference. In the body of his complaint, he does not even mention the conduct of a specific Defendant until he describes the actions of Defendants Buskirk, Aikin, Harbaugh, and Russell during August, September and November of 2016 when they denied Plaintiff's grievances.

Only the documents attached to Plaintiff's complaint give some clue as to the role each Defendant played in the alleged denial of medical care.

    A.    <u>Nurse Joan Alfrey.</u>

On August 21, 2015, Plaintiff sent a Health Care Request asking to see the doctor about back pain. (8/21/2015 Health Care Request, ECF No. 1, PageID.9.) He reported that the pain was "really bad" and causing discomfort and a lack of sleep. (*Id.*) Nurse Joan Alfrey responded on August 24, 2015. (8/24/2015 Kite Response, ECF No. 1, PageID.10.) She commented that in addition to acetaminophen, Plaintiff should continue to take ibuprofen as an anti-inflammatory. (*Id.*) In addition, she recommended that Plaintiff stay active by walking. (*Id.*) Finally, Nurse Alfrey told Plaintiff to rekite if needed. (*Id.*)

There is no other mention of Defendant Alfrey in the complaint. Plaintiff's allegations indicate that he knew that the nurse Defendants did not have the authority to provide the relief he was seeking. He admits that the nurses could not prescribe the medications or order the MRI he wanted. Thus, one cannot infer deliberate indifference from the nurses' failure to prescribe medications or order an MRI.

5

Moreover, there is nothing in the complaint to suggest the nurses ignored Plaintiff's requests for help. Whenever one of the Defendant nurses intervened, he or she would implement the prescribed course of treatment or schedule an appointment as requested. Therefore, Plaintiff's allegations regarding Defendant Alfrey, and all the other nurses, falls well short of identifying the requisite indifferent state of mind. Based on the limited information Plaintiff has provided, he has failed to state a deliberate indifference claim against Nurse Alfrey.

B.   Nurse Meredith Hammond

On August 26, 2015, Plaintiff sent a Health Care Request asking to see a doctor because his back pain was bad and over-the-counter medications were not working. (8/26/2015 Health Care Request, ECF No. 1, PageID.11.) On August 28, 2015, Nurse Hammond responded by making an appointment with a nurse. (8/28/2015 Kite Response, ECF No. 1, PageID.12.)

On June 14, 2016, Plaintiff sent a Health Care Request to see a doctor about his back pain. (6/14/2016 Health Care Request, ECF No. 1, PageID.27.)[2] Nurse Hammond responded, noting that his current request was virtually identical to one from the prior month and that an appointment had been scheduled on May 20, 2016, in response to that request. (6/16/2016 Kite Response, ECF No. 1, PageID.28.) Nurse Hammond instructed Plaintiff:

> It may seem counterintuitive, but the best treatment for lower back pain is exercise, not drugs, not rest. Exercise[sic] helps to get your muscles, tendens [sic], and bones to their proper alighnment [sic] and it strengthens your core abdominal muscles that will reduce the risk of back pain long term. Enclosed are the recommended exercises for lower back pain. Try to avoid lymping [sic] or other unnatural

---

[2] The June 14, 2016, Health Care Request was the fifth in a series of five virtually identical requests complaining of pain and asking to see the doctor. (3/1/2016, 4/17/2016, 4/28/2016, 5/12/2016, 6/14/2016 Health Care Requests, ECF No. 1, PageID.24-27.) The only response Plaintiff provides is the June 16, 2016 Kite Response from Nurse Hammond. It is apparent, however, that there were other responses. Plaintiff's grievance and the responses to the grievance reveal that Plaintiff was seen by a doctor on April 7, 2016, and prescribed Naproxen and Tylenol as well as an exercise program. (8/15/2016 Grievance, ECF No. 1, PageID.33-37.) Only ten days later, Plaintiff concluded that that remedy had failed and asked to see the doctor again. Plaintiff was scheduled for appointments with nurses, but he refused to attend them because he believed the nurse could do nothing for him. (*Id.*) The medical provider concluded that the MRI and more potent pain medications were not medically indicated. (*Id.*, PageID.35.) Plaintiff continued to be seen by the medical provider in the Chronic Care Clinic. (*Id.*)

6

movements.  Your recovery is in your hands, not a pill.  It can take several weeks of these to feel a difference.

(*Id*.)

There is no other mention of Defendant Hammond in the complaint.  The most Plaintiff alleges about Nurse Hammond is that he complained and she scheduled an appointment and, almost a year later, he complained and she encouraged him to proceed with the recommended exercise regimen.  The allegations do not describe the sort of reckless disregard for Plaintiff's health that might give rise to an Eighth Amendment deliberate indifference claim.

### C. Nurse Kevin D. Corning

Apparently on September 3, 2015, after Nurse Hammond had scheduled an appointment for Plaintiff, but before the appointment, Plaintiff again complained about the pain and the ineffectiveness of the medications.  Nurse Corning responded that Plaintiff would be seen for the complaint, as scheduled, on September 9.  (9/3/2015 Kite Response, ECF No. 1, PageID.13.)  There is no other mention of Defendant Corning in the complaint.  Again, these allegations do not describe the sort of reckless disregard for Plaintiff's health that might give rise to an Eighth Amendment deliberate indifference claim.

### D. Nurse Lindsey Taylor

Apparently, Plaintiff's September 9, 2015, appointment resulted in some contact with a doctor because Plaintiff was prescribed a muscle relaxer, Flexeril.  Plaintiff was under the impression that the prescription for Flexeril would continue for 30 days and then he would be called to see the doctor.  When the prescription stopped on September 18, 2015, he immediately sent a health care request.  (9/18/2015 Health Care Request, ECF No. 1, PageID.14.)  Nurse Taylor responded to the request, informing Plaintiff that the follow-up appointment was already scheduled and that she would schedule a chart review for the doctor to determine if the medication should be

7

continued. (9/20/2015 Kite Response, ECF No. 1, PageID.15.) There is no other mention of Nurse Taylor in the complaint. The allegations do not permit any inference that Nurse Taylor was deliberately indifferent to a serious medical need.

E. Nurse Mitchell S. Williams[3]

Apparently, the chart review did not result in a continuation of the prescription for Flexeril. On September 29, 2015, Plaintiff sent a new health care request seeking to find out why the "medication" had not been renewed. (9/29/2015 Health Care Request, ECF No. 1, PageID.16.) Nurse Williams responded the next day. (9/30/2015 Kite Response, ECF No. 1, PageID.17.) He noted that the orders for Tylenol and Naproxen had been continued. (*Id*.) Nurse Williams further explained that the Flexeril had only been ordered for 7 days. (*Id*.) There is no other mention of Nurse Williams in the complaint. The allegations do not demonstrate that Nurse Williams was indifferent to Plaintiff's medical needs in any way. Plaintiff asked a question. Nurse Williams answered that question.

F. Nurse Jerry C. Ritz

On November 29, 2015, Plaintiff sent a new health care request asking to see the doctor about his medication. (11/29/2015 Health Care Request, ECF No. 1, PageID.18.) He complained that he was fatigued, weak, tired and sleepy, yet he was still in pain. (*Id*.) He concluded the medication was not working. (*Id*.) Nurse Ritz responded the next day that Plaintiff could discuss his medication with the provider at his upcoming appointment. (11/30/2015 Kite Response, ECF No. 1, PageID.19.)

---

[3] Plaintiff identifies Defendant Williams as a registered nurse. With respect to all of the other nurses in subsections A-H, the documents attached to the complaint indicate the nurses are registered nurses. There is no indication in the documents, however, with respect to Defendant Williams registration or certification.

8

That appointment apparently resulted in continuing orders for over-the-counter medications and a referral to physical therapy for stretches. By health care request dated January 3, 2016, Plaintiff complained that he was in pain despite those interventions. (1/3/2016 Health Care Request, ECF No. 1, PageID.20.) Nurse Ritz responded three days later that he would schedule another chart review with the medical provider. (1/6/2016 Kite Response, ECF No. 1, PageID.21.)

There is no other mention of Nurse Ritz in the complaint. The allegations show that Nurse Ritz was responsive, not indifferent, to Plaintiff's medical need.

### G. Nurse Karen Rosa

Plaintiff apparently sent a new health care request on January 16, 2016, again asking to see the doctor for his back pain. Nurse Rosa responded that an appointment had been scheduled, but that "due to the immobilization" it would be rescheduled. (1/19/2016 Kite Response, ECF No. 1, PageID.22.) It is not clear whether Nurse Rosa is referring to a medical immobilization of some part of Plaintiff's body to permit healing or his back pain's immobilizing impact. Either way, the rescheduling of the appointment does not demonstrate the sort of deliberate indifference that might give rise to an Eighth Amendment claim. There is no other mention of Nurse Rosa in the complaint.

### H. Nurse Sherri Gregurek

Chronologically, Plaintiff's next requests were submitted in March, April, May, and June of 2016. They are addressed in § III. B., including footnote 2, above. Following those requests, Plaintiff next complained in a health care request dated August 1, 2016. (8/1/2016 Health Care Request, ECF No. 1, PageID.29.) He again asked to see the doctor. (*Id*.) He claimed that he "did everything [he] was told to do and its [sic] not working." (*Id*.)

Nurse Gregurek responded that she would schedule Plaintiff for a nursing evaluation to determine if referral to a doctor was appropriate. (8/3/2016 Kite Response, ECF No. 1, PageID.30-32.) Pending the appointment, she suggested that Plaintiff continue with his over-the-counter medications, apply cool or warm compresses, and perform a series of back exercises. (*Id*.) There is no other mention of Nurse Gregurek in the complaint. Her suggestions to Plaintiff to alleviate the pain pending the scheduled appointment do not evidence deliberate indifference to his medical needs.

> I. The Grievance Responders
> (Defendants Buskirk, Kamp, Aiken, Harbaugh, and Russell)

The only action Plaintiff alleges by Defendants Buskirk, Kamp, Aiken, Harbaugh, and Russell is responding to Plaintiff's grievance regarding the failure of the other Defendants to provide the medical care he desired. Defendant Buskirk interviewed Plaintiff and responded at the first step of the grievance process; Defendant Kamp reviewed the first step response; Defendant Aiken responded at the second step; and Defendants Harbaugh and Russell responded at the third step.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act

based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Buskirk, Kamp, Aiken, Harbaugh, and Russell engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

        J.      <u>The MDOC</u>

Plaintiff may not maintain a § 1983 action against the Michigan Department of Corrections. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g., McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

### K. The unknown doctors

The health care requests, kite responses, and the grievance reveal that Plaintiff was seen by medical providers[4] on multiple occasions over the period covered by his complaint. Plaintiff does not allege that the medical providers failed to provide treatment or ignored his complaints. Instead, he complains that they would not provide more effective pain medication and would not order an MRI.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received

---

[4] Although Plaintiff repeatedly asked to see a doctor, the responses typically reference that Plaintiff has seen or is scheduled to see a medical provider. That term is defined by MDOC policy directive to include "a licensed physician, physician assistant, or nurse practitioner in the State of Michigan." MDOC Policy Directive 03.04.100 (eff. 2/1/2015).

inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2013) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

There can be no question that Plaintiff received medical treatment for his back pain. He was provided a number of medications, physical therapy, and exercises. The medical providers' judgment that an MRI was not necessary is not a denial of treatment. The plaintiff in *Estelle v. Gamble* also complained of back pain. *Estelle*, 429 U.S. at 107. The doctors treated inmate Gamble with bed rest, muscle relaxants, and pain relievers. Gamble wanted additional diagnostic tests and forms of treatment to alleviate his back pain. The Supreme Court concluded Gamble had failed to state a claim:

> [T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court . . . .

*Estelle*, 429 U.S. at 107. Courts have routinely relied on *Estelle* to conclude that failure to order an MRI is not deliberate indifference. *See, e.g., Riddick v. Maurer*, __ F. App'x __, 2018 WL

13

1750582 (2d Cir. 2018); *Dykeman v. Ahsan*, 560 F. App'x 129 (3d Cir. 2014); *Laws v. Wexford Health Sources, Inc.*, 721 F. App'x 544 (7th Cir. 2018); *Tucker v. Meyer*, 165 F. App'x 590 (10th Cir. 2006); *Owen v. Corizon Health, Inc.*, 703 F. App'x 844 (11th Cir. 2017); *Thompson v. Corr. Med. Servs.* No. 09-14483, 2016 WL 1118639 (E.D. Mich. Mar. 21, 2016); *Brooks v. Jones*, 1:14-cv-631, 2014 WL 7212897 (W.D. Mich. Dec. 17, 2014).

The same reasoning applies with respect to the difference of opinion between Plaintiff and his medical providers regarding the potency of the pain relievers prescribed. The Sixth Circuit considered the difficult choices faced by medical providers when considering the possibility of prescribing narcotic medication:

> [T]he treatment of chronically suffering prisoners with narcotic medication does not fit neatly into our general Eighth Amendment test. Instead of weighing a single alleged risk of harm, against which the adequacy of official action can be judged, a reviewing court is asked to pass judgment on the attempts by prison medical staff to navigate between the Scylla of debilitating pain and the Charybdis of addiction to prescription drugs.
>
> There are occasions when an official has a subjective, good-faith belief that a particular response to a prisoner's substantial risk of serious harm might either 1) fail to mitigate the risk or 2) create or enable a different substantial risk of serious harm to the prisoner. In those situations, an official's decision not to authorize that particular response cannot be considered an act of deliberate indifference, and we are mindful of the possibility that a reasonable response to a risk may not be able to avert the ultimate harm. *See Farmer*, 511 U.S. at 844. These scenarios most commonly occur within the context of medical treatment, which is why both the Supreme Court and this court have rejected Eighth Amendment claims that second-guess the medical judgments of medical personnel. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); Graham [*ex rel. Estate of Graham v. Cnty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004)].
>
> In a series of recent unpublished decisions, this court has rejected a number of claims similar to those in Baker's complaint. In *Brock v. Crall*, 8 F. App'x. 439, 441 (6th Cir. 2001), we ruled that an Eighth Amendment complaint failed to state a proper claim for relief where the primary allegation was that two doctors failed to diagnose and treat a lower back ailment. In *Moses v. Coble*, 23 F. App'x. 391, 392 (6th Cir. 2001), where a prisoner alleged that he suffered pain from his serious back problems due to defendants' refusal to provide anything beyond over-the-

14

counter pain medication, we affirmed the dismissal of the complaint as "clearly frivolous."

*Baker v. Stevenson*, 605 F. App'x 514, 519 (6th Cir. 2015); *see also Mabry v. Antonini*, 289 F. App'x 895, 902 (6th Cir. 2008) ("Mabry's claim against Dr. Antonini is merely a complaint that he did not order specific tests, or provide specific medications, treatment, or dosages. Such an assertion does not state a constitutional claim of deliberate indifference as to serious medical needs."); *Clark v. Frontera*, No. 2:06-cv-40, 2008 WL 3833407, at *5 (W.D. Mich. Aug. 13, 2008) ("In this case, Plaintiff was receiving Tylenol for his back pain, but claimed that he required stronger medication to relieve his pain . . . such claims do not rise to the level of an Eighth Amendment violation.").

The allegations in Plaintiff's complaint are insufficient to show that the medical providers were deliberately indifferent to his serious medical needs. Therefore, Plaintiff has failed to state a claim against them.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants all will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:     June 14, 2018           /s/ Robert J. Jonker
                                                      ROBERT J. JONKER
                                                      CHIEF UNITED STATES DISTRICT JUDGE